**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

IN RE:

CASE NO. 08-13152-RAM

DALE L. TENHOLZEN

Chapter 7 Proceeding

Debtor
_______________________________/

NATALIYA SONIS

Plaintiff

v.

ADV. NO. 08-01401-RAM

DALE L. TENHOLZEN

Defendant
_______________________________/

**AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO BANKRUPTCY CODE §523(A)(2)**

Plaintiff, Nataliya Sonis ("Plaintiff"), by and through her undersigned counsel, hereby files this *Amended Complaint to Determine Dischargeability of Debt Pursuant to Bankruptcy Code §523(a)(2)* ("Complaint"), against Defendant DALE L. TENHOLZEN ("Defendant"), and would respectfully set forth and allege as follows:

**JURISDICTION AND PARTIES**

1. The Bankruptcy Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334 and 157, and 11 U.S.C. §523. This is a core proceeding under 28 U.S. C. §157(I).

2. Plaintiff is now, and at all times herein mentioned was, a resident of the State of Florida.

3. Defendant filed a Voluntary Petition for Relief pursuant to Chapter 7 of the Bankruptcy Code, with this Court on or about March 17, 2008.

4. This Complaint is brought pursuant to Bankruptcy Code §523(a)(2) and *Federal Rule of Bankruptcy Procedure* Rule 7001(6), seeking an order of this Court that a certain debt that

is due to Plaintiff is a debt arising out of the Defendant's false pretenses, false representations or actual fraud, and therefore the debt due to Plaintiff should be chargeable against Defendant, and not otherwise dischargeable in the Defendant's bankruptcy case.

**FACTUAL BACKGROUND**

5. Sometime in the year 1998, Plaintiff met one Alla Tenina ("Tenina"). Plaintiff and Tenina immediately became close friends and confidants. Subsequently, Tenina became an attorney licensed to practice law in the states of New York and New Jersey on or around 2000, and in California in the year 2002. As a result of the close relationship that Plaintiff and Tenina maintained, coupled with the fact that Tenina became a licensed attorney, Plaintiff began to rely and trust Tenina's counsel, advise and judgment.

6. Sometime towards the end of 2004, Tenina met the Defendant. They immediately became close friends, and their friendship grew into a close intimate relationship some time around April or May, 2005. The Defendant's intimate relationship with Tenina lasted for approximately 6-8 months, but the Defendant and Tenina remained very good friends thereafter, speaking several times a month, and even traveling to the Bahamas together sometime in April-May, 2007.

7. Sometime in November or December of 2005, Tenina introduced the Plaintiff to the Defendant. At the time of this introduction, Plaintiff was made aware that Tenina and the Defendant had a close intimate relationship. Because the Plaintiff trusted Tenina and her judgment, Plaintiff immediately became good friends with the Defendant.

8. The Plaintiff had had several discussions with Tenina about making possible investments, and Plaintiff had requested Tenina to be on alert for any good business investments that might come her way. In that regard, commencing sometime around April 2006, the Defendant approached Tenina and began discussing an investment opportunity. These discussions continued over several months on the telephone. The Defendant advised Tenina that he was getting involved in a business arrangement where he would be

purchasing through business entities, a large portion of land in Mississippi, and offering, through private placement memberships in a limited liability company, to which he would control, equity interests to third parties. The limited liability company would be called Participating Partners, LLC. ("LLC"). The Defendant explained to Tenina that the offering was to fund specific construction of houses on land that was to be acquired by LLC.

9. As the discussions about this possible investment continued between Tenina and the Defendant, Tenina indicated to Defendant that Plaintiff might be an interested investor, and that Tenina was acting as Plaintiff's representative and attorney. Once Defendant learned of the existence of the Plaintiff as an interested potential investor, and that this investor was already a close friend of his, the "sales pitch" discussions continued in earnest, through on or about February 16, 2006. Several conversations were attended by Plaintiff along with Tenina, whereby Defendant repeated the representations concerning this investment. To the extent that Plaintiff was not part of the conversations, Defendant specifically requested Tenina to repeat the representations being made about the investment by Defendant to Plaintiff in order to convince Plaintiff to make an investment. As further inducement for Plaintiff to make an investment in LLC, the Defendant promised the Plaintiff, through Tenina, that all investors in the LLC would receive 100% of their return within one year and one day of the investment. Further, the Defendant promised that the investment would be fully secured and protected by a lien on the land to be purchased by LLC. Finally, and as a representation specifically made directly to the Plaintiff during one of the various telephone conversations, Defendant indicated that if Plaintiff felt uncomfortable with her investment after a six month period, should she not see any progress in the project's development, than Defendant would personally refund her initial investment out of his own monies, and pay a pro rata share percentage of return on her investment. The Defendant assured Plaintiff that he had the financial wherewithal and solvency to refund her initial investment through his own personal monies, as he had experience in buying real estate mortgages

throughout the country; had other real estate holding interests including an ownership in a large residence in Coral Gables, Florida; he had sufficient cash; and that he had experience in real estate development.

10. To induce Plaintiff to make the investment, Defendant represented to Plaintiff that he was financially solvent and creditworthy; that he possessed substantial cash, real property, and personal property assets; and that Defendant would be able to repay the membership funds with interest to Plaintiff. Further, Defendant represented that the investment had low risk, as the investment would be protected by a mortgage on the real property, and in any event, the investment would be paid back in a short period of time. All of these representations were false.

11. As a result of, and relying upon the close relationship that both the Plaintiff and Tenina had with the Defendant, Plaintiff made an investment in this project. On or about February 16, 2006, Defendant, for valuable consideration, successfully solicited Plaintiff to invest in a membership in LLC. A contract between the Plaintiff and the Defendant, designated as Membership & Membership Capital Contribution of Understanding Agreement, ("Contract"), called for in the original principal sum of $50,000, repayable in one year with a potential profit return on investment capped at 100% in total returns. A true and correct copy of the Contract is attached hereto as an Exhibit, and is incorporated herein by this reference.

12. On or about February 17, 2007, Defendant defaulted under the terms of the Contract by failing to repay the funds due under the Contract, although demand for payment was made by Plaintiff. Following said default by Defendant as aforesaid, Plaintiff declared all sums due under the Contract immediately due and payable.

13. There remains due, owing, and unpaid from Defendant to Plaintiff on the Contract the principal sum of $50,000, together with the potential return on investment up to $50,000, until paid in full or until date of entry of Judgment.

14. The afore-mentioned representations made by Defendant were false when made, and Defendant knew them to be false. The Defendant made these false representations to Plaintiff, either directly or through Plaintiff's counsel Tenina, for the purpose of inducing reliance by Plaintiff. Plaintiff justifiably relied on these representations made by Defendant, and made the investment. As a result, Plaintiff has been damaged by the loss of her investment of $50,000, and the loss of Plaintiff's return on her investment. Had Plaintiff known the true facts, she would not have extended credit to the Defendant.

15. As examples of the falsity of the representations, Defendant failed to reveal that he was in fact not financially solvent; that he was fighting a bitter divorce and owed thousands of dollars in spousal and child support and was hiding money from his ex-wife's attorneys; that the parcels of real property which the Defendant still owned were so over-encumbered that there was no equity in those properties; and that extensive liens also existed against the Defendant's personal property. In addition, the creation of LLC and solicitation of membership for valuable consideration was just a scam with third parties, including but not limited to one named Dean Roffers. There are no developments of real property as provided in the Contract, and such development was never intended.

**CLAIM FOR RELIEF**
**[11 USC §523(a)(2)(a)]**

16. The Defendant induced Plaintiff to extend credit by false pretenses, false representation or, alternatively, by actual fraud, when at the time the obligation was incurred the Defendant knew or should have known that he did not have the ability to repay said debt and, in fact, had no intention of repaying said debt. Further, Defendant knew or should have known that the real estate projects that Plaintiff was purportedly investing in, were nothing more than shams.

17. These representations were made by Defendant with the intent to defraud and deceive Plaintiff and to induce Plaintiff to act in reliance thereon. In reliance on said representations by the Defendant, Plaintiff extended credit to the Defendant as alleged herein above. Had Plaintiff known the true facts, she would not have extended credit to the Defendant.

18. By reason of the Defendant's actions as alleged above, his obligation to Plaintiff should not be discharged. By reason of the misrepresentations of the Defendant, Plaintiff has been damaged in the principal sum of $50,000, together with contractual interest, attorney's fees and costs of collection, including, but not limited to, attorney's fees and costs of collection incurred in pursuing this action.

**WHEREFORE,** Plaintiff prays for relief as follows:

1. For a determination by this Court that Defendant's debt to Plaintiff is non-dischargeable under 11 USC §523(a)(2)(a);

2. For entry of Judgment against the Defendant for the the sum of $50,000 representing the initial investment lost, plus an amount up to $50,000 representing the loss of investment profit return;

3. For entry of Judgment against the Defendant in sums representing Plaintiff's attorney's fees and costs incurred, in such sums according to proof;

4. For Plaintiff's reasonable attorney's fees and costs incurred in bringing this action; and

5. For such other and further relief as this Court may deem just and proper under the circumstances.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 12, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document is being

served this day on **Dale L. Tenholzen** , 3500 Frantz Road, Miami, Florida 33133; **Ronald G. Neiwirth, Esquire**, Espirito Santo Plaza, 14th Floor, Miami, Florida 33131; **U.S. Trustee**, 51 S.W. First Avenue, Room 1204, Miami, Florida 33130; **Drew M. Dillworth, Trustee**, 2200 Museum Tower, 150 W. Flagler Street, Miami, Florida 33130, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

BEHAR, GUTT & GLAZER, P.A.
Attorneys for Plaintiff
2999 N.E. 191st Street, Fifth Floor
Aventura, Florida 33180
Telephone: (305) 931-3771
Fax: (305) 931-3774

By **S/ Brian S. Behar**
BRIAN S. BEHAR / FBN: 727131

S:\109994.01\Pleadings\Complaint.wpd

**Membership & Member Capital Contribution Memorandum Of Understanding Agreement**

This Membership & Member Capital Contribution Memorandum Of Understanding Agreement (Agreement) is entered into this 16 th day of February, 2006 by Participating Partners, LLC. (a Florida LLC) and Nataliya Sonis as the prospective Member (Member). The purpose of this Agreement is to memorialize the aforementioned parties (Parties) intentions to enter into certain business arrangement with one another whereby Prospective Member is desirous to become a Member in Participating Partners, LLC. In the form of a passive Financial Participant by Member's acceptance of terms and conditions of this Agreement. Parties Agree as follows:

**RECITALS**

**Whereas,** Dale Tenhulzen as a Agent/Director for certain Florida LLC (s) on behalf of and benefit of its various existing business associates on November 16, 2006 entered into certain business opportunities as a passive Financial Participants by executing agreements by subscribing in 6 Units of "All in One Advantage Plus Modular Homes Sales, Distribution & Sales Center Business Opportunity, and Project Specific Participation Programs" offered by/through "Gulf Coast Business Services LLC. (GCBS)" on behalf of its affiliated companies- "Gulf Coast Modular Homes, Inc. (GCMH)" and "Mississippi Land Developments, LLC. (MLD)".

**Whereas,** Subsequently Dale Tenhulzen as a Agent/Director for certain Florida LLC (s) has caused formation of three separate special purpose Florida domiciled entities in the form of "LLC's" namely: Gulf Coast Real Estate Equities, LLC", "Equity Holdings, LLC", and "Participating Partners, LLC." On December 18, 2006, Dale Tenhulzen as a Principal/ Agent for Florida LLC (s) has assigned all rights, titles, obligations, and full financial benefits to the aforementioned 6 Participation Agreements to "Equity Holdings, LLC." with provision that "Participating Partners, LLC" to become the sole member of "Equity Holdings, LLC." and "Equity Holdings, LLC." to be appointed as the sole Managing Member of the "Participating Partners, LLC." with Dale Tenhulzen to be appointed as the "Nominee Director" of both Participating Partners, LLC. and Equity Holdings, LLC. Under this business arrangement only Participating Partners, LLC. is structured as a multi-member entity., and the sole business activity of Equity Holdings, LLC is the financial management of Participating Partners, LLC. for its Members benefit (said "Assignment & Appointment Notification" is attached and incorporated herein).

**Whereas,** In accordance with terms and conditions of aforementioned "Participation Agreements" the total subscription costs of the 6 Units of Participation Agreements' was set at $2,100,000 (6X$350,000). Member acknowledges prior receipt, review, and acceptance of terms and conditions of GCBS's GCMH, and MLD Prospectuses and Participation Agreements prior to Member's execution of this Agreement. Just to summarize the Participation benefits: Each Participation Agreement incorporates 3 categories of Financial Participation Principal fund commitments at: $50,000 (capped at 100% in total return payable in the form of Participation Fees for each Modular Home Retail Closed Sales and return of Principal for a one year term in GCMH general business activities), $100,000 (capped at 100% in total return payable in the form of Participation Fees for each Home & lot or townhouse sold/closed Participation in one of MLD's development projects and return of Principal for a one year term), $200,000 (Perpetual Participation on a fractional basis in one of GCMH Distribution & Sale Center locations from sale of homes sold to retail customers at $625 with no cap or limits to number or amount of Participation Fees earned in return/in lieu of the $200,000 in Participation Principal).

**Whereas,** Based on above the Equity Holdings, LLC.'s 6 Participation Agreements contain 6 sub-units at $50,000 each in Participation opportunities, 6 sub-units at $100,000 each in Participation opportunities in MLD's real estate sub-development projects, 6 sub-units at $200,000 each in GCMH's "Distribution & Sale Center Business Opportunity" for a total of 18 sub-units that each Prospective Member can select from. A single Member can sign up for Participation in one or more $350,000 full feature "All in One...." Participation Program covering all three categories of Participation benefits, or sign up for one or more sub-unit, so on and so forth. Member shall hereby agree to hold GCBS, GCMH, and MLD organization harmless arising out of any disputes and or claims arising out of this Agreement and Member's membership in the Participating Partners, LLC. , the only direct recourse a Member shall have is against Participating Partners, LLC. and Equity Holdings, LLC.

**Whereas,** Based on above each Member's Participation and financial benefit is standalone based only from the benefits a particular Member derives from financial benefits of sub-unit (s) that the Member selects to Participate in. This is not a profit sharing arrangement between the memberships. After all membership sign up completed the total Capital Account of Participating Partners, LLC would have $2,100,000 in total Member Capital Contribution. Gulf Coast Real Estate Equities, LLC. as a first Member of Participating Partners, LLC. has a total of $300,000 in Capital Contribution by subscribing in all 4 sub-units at $50,000 and 1 sub-units at $100,000 each in GCMH's general business opportunities Participation Program.

**Now Therefore**, Parties agree to proceed as follows:

- Parties shall agree that the terms and conditions of this Agreement is legally binding and shall form the basis and to be incorporated into the Member's final Membership/ Operating Agreement the structural format of which shall conform to all applicable rules and customary standards. The Equity Holdings, LLC and Participating Partners, LLC. Membership/Operating Agreements may contain a provision for customary Management and Administration Fees to be agreed upon by all Members.
- This Agreement shall also serve as the Participating Partners, LLC Member's Capital Contribution Fund Remittance Receipt whereby Member agree to a total Capital Contribution of $50,000 involving 1 Unit of full feature "All in One..." Participation Agreement or Participation in 1 of $50,000 sub-units , 0 of $100,000 sub-unit (s), 0 of $200,000 sub-unit(s). Member agrees to an initial Fund Remittance of $_____NA_________ remitted in the form of a wire transfer to Participating Partners, LLC. Capital Account (as per attached banking coordinates). In addition, Member shall agrees that the remaining balance of Member's Capital Contribution of $______NA_______ will be remitted on or before _____NA________ .

**Agreed and Accepted By:**

**Member:**

X: [signature]

**Participating Partners, LLC.**

X: [signature]
**Dale Tenhulzen, Nominee Director**

**Assignment & Appointment Notification**

Dated: 12-18-2006

Mr. Dean Roffers, Director
Gulf Coast Business Services, LLC.
Gulf Coast Business Services, Inc.
Mississippi Land Developments, LLC.
Corporate Offices:
1636 Popps Ferry Road, Suite 106
Biloxi, Mississippi 39532

Transmitted via: Hand Delivery

Dear Mr. Roffers,
Please accept this Assignment & Appointment Notification effective immediately that undersigned Dale Tenhulzen as a Agent/Direct for certain Florida LLC (s) hereby assigns all rights, titles, obligations, and benefits to certain business opportunities as a passive Financial Participants by their previous execution on November 16, 2006 of the agreement to subscribe to 6 "Participation Agreements" in "All in One Advantage Plus Modular Homes Sales, Distribution & Sales Center Business Opportunity, and Project Specific Participation Programs" offered by/through "Gulf Coast Business Services LLC. (GCBS)" on behalf of its affiliated companies- "Gulf Coast Modular Homes, Inc. (GCMH)" and "Mississippi Land Developments, LLC. (MLD)" at $350,000 (Three Hundred Fifty Thousand Dollars) per Participation Agreement to "Equity Holdings, LLC. – a Florida entity.

Furthermore, please be advised that "Participating Partners, LLC", another formed Florida entity which is appointed as the sole Member of Equity Holdings, LLC. is responsible to internally organize our various existing business associates as Members with their respective Capital Contributions initially through various interim Agreements and final Membership/Operating Agreements. Equity Holdings, LLC. is hereby appointed as the sole Managing Member of Participating Partners, LLC. I will serve as the Nominee Director of both Equity Holdings, LLC, and Participating Partners, LLC.

Equity Holdings, LLC is looking forward to a successful business relationship with you and your organization.

**Agreed & Accepted By:**

Assignee & Appointee

X: [signature]
Dale Tenhulzen, Director
Equity Holdings, LLC

**Acknowledged By:**

X: [signature]
Dean Roffers, Director